UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

WADIYA BASIR,

        Plaintiff,

        - against -

NEW CARLTON REHABILITATION AND
NURSING CENTER,

        Defendant.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
13-cv-5726 (RRM) (MDG)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff Wadiya Basir, through counsel, brought this action against her former employer New Carlton Rehabilitation and Nursing Center ("New Carlton") by petition filed in the New York State Supreme Court, seeking to vacate an arbitration award rendered pursuant to a collective bargaining agreement between New Carlton and Basir's union, 1199/SEIU United Health Care Workers East (the "Union"). After removing this action to this Court, (*see* Notice of Removal (Doc. No. 1 at 1) at ¶¶ 9–11), New Carlton moves for its dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss (Doc. Nos. 16–18, 20.)) Basir opposes dismissal, and seeks to have this action remanded to state court. (*See* Mem. in Opp'n (Doc. No. 19) at 1.) For the reasons that follow, the Court finds that removal was proper, and dismissal is warranted.

## BACKGROUND[1]

    As alleged in Basir's petition, New Carlton is a nursing home facility located in Kings County, New York. (Verified Pet. (Doc. No. 1 at 8) at ¶ 2.) New Carlton employed Basir from

---

[1] For purposes of Rule 12(b)(6) review, the Court takes all factual allegations in Basir's verified petition as true and draws all reasonable inferences in her favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In addition to the petition itself, the Court considers the documents attached to the petition as well as those incorporated by reference therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (finding that on a motion to dismiss, courts may consider, among other things, any "written instrument attached to [the petition] as an exhibit," and any "statements or documents incorporated in it by reference" (quotation marks omitted)).

2002 through 2009. (*Id.* at ¶ 1.) During that time, Basir was a member of the Union, and was employed under a collective bargaining agreement ("CBA") between the Union and the League of Voluntary Hospitals and Homes of New York.[2] (*Id.* Ex. 5 (excerpt from "Collective Bargaining Agreement between League of Voluntary Hospitals and Homes of New York and 1199SEIU United Health Care Workers East").) She was terminated from her employment on June 17, 2009.

**Basir's Termination**

The instant petition alleges the following events leading to Basir's termination. On March 30, 2009, Basir was suspended for five days without pay for failing to position a patient at the appropriate angle prior to administering medication. (*Id.* at ¶ 4.) On April 7, 2009, the day Basir returned to work, her union representative told her that she had been accused of negligently choking the patient. (*Id.* at ¶ 5.) Basir disputed the accusation, noting that the patient's chart clearly stated that the patient coughed during the administration of the medication and was seated and waiting for lunch forty-five minutes later. (*Id.*) Basir claims that, on April 21, 2009, the

---

[2] At a premotion conference held before the Court on May 15, 2014, New Carlton indicated that the CBA attached to Basir's verified petition was not the one governing Basir's employment. The Court then instructed New Carlton to provide a copy of the collective bargaining material. (*See* May 15, 2014 Minute Entry.) On June 13, 2014, Basir filed a letter with the Court stating that "defendant has served Plaintiff with . . . [the CBA] for which she is a beneficiary," and indicated her position that "the mentioned CBA does not add to [New Carlton]'s jurisdictional argument." (June 13, 2014 Wade Letter (Doc. No. 12).) The Court noted that Basir's letter made only a "conclusory assertion about jurisdiction without stating her position as to which collective bargaining agreement governs," and ordered Basir to file a revised status report. (June 14, 2014 Order.) On June 20, 2014, Basir filed a letter which reads, in its entirety, "[t]his is [sic] response to the Court's Order dated June 13, 2014, and state [sic] that the plaintiff is a beneficiary under the Collective Bargaining Agreement provided by the defendant following the Pre Motion Conference held on May 14 [sic], 2014." (June 22, 2014 Wade Letter (Doc. No. 13).) On June 25, 2014, the Court issued an Order stating that Basir's two letters "do not comply with the Court's straightforward orders to file a letter advising whether the complaint annexes the wrong CBA," and directing the parties to file either (1) a joint proposed briefing schedule for New Carlton's proposed motion to dismiss or (2) a letter advising the Court that Basir has proposed an amended complaint that obviates the need for such motion practice. (June 25, 2014 Order.) On June 30, 2014, the parties filed a joint proposed briefing schedule. (June 30, 2013 Schudroff Letter (Doc. No. 15).) Along with its motion to dismiss, New Carlton filed a collective bargaining agreement different from the one included in Basir's verified petition. (*See* Aff./Decl. in Supp. at Ex. B. ("Agreement By and Between 1199SEIU United Healthcare Workers East and Empire State Labor Group").) Despite Basir's non-responsiveness to the Court's orders, and in light of both the standards for 12(b)(6) review and the fact that it would not change the Court's analysis, the Court refers to the CBA attached to Basir's complaint throughout this Memorandum and Order.

2

nursing home changed the reason for Basir's suspension to "chocking [sic] incident," and placed Basir on a one month probationary period. (*Id.* at ¶ 6, Ex. 3 (Notice of Termination).) In a letter informing Basir of her thirty-day probationary period, New Carlton specifically advised, "we have concerns about your ability to function as a charge nurse," and indicated that managers would closely monitor and shadow her, and that she could be terminated for any rule infraction. (*Id.* at ¶ 6, Ex. 2 (Notice of Probation).) The letter continued:

> In the event that our evaluation during this period indicates your inability to function on the unit as a charge nurse . . . you will be removed from the schedule and terminated. We will meet with you at the end of the probation period to discuss our findings with you. However, please be aware that if any serious issues are ascertained during the thirty day probation period, than [sic] this meeting may occur sooner.

(*Id.*)

On June 17, 2009, approximately seventeen days after the end of her probationary period,[3] New Carlton terminated Basir. (*Id.* at ¶ 7.) Basir's termination letter stated that it was "the consensus of Nursing Administration that [Basir was] not able to fulfill the role of charge nurse," specifically citing "numerous errors and examples of poor judgment during the probation period" including the following:

- Basir had been inaccurate or incomplete in her transmittal of morning reports to her staff.

- On May 1, 2009, Basir disregarded a resident's call bell. When confronted about the incident, Basir stated that she had not been paying attention, and was given one to one in-service counseling.

- On June 3, 2009, Basir failed to properly allocate staff, leaving some residents temporarily unassigned when their assigned nursing assistant left the floor for

---

[3] Basir's probation period was interrupted by a two week vacation from May 11, 2009 through May 25, 2009. (Verified Pet. Ex. 3.)

> another assignment. As discussed more fully below, this incident became the focus of the arbitrator's finding upholding Basir's termination.

- On June 9, 2009, Basir failed to initial a record indicating whether she had administered a resident's 10:00 AM medical dosage, leading to uncertainty as to whether the medicine was administered at all.

- On June 17, 2009, Basir signed an emergency equipment checklist indicating that she had checked a glucometer, but later that day it was ascertained that it was missing "Chem Strips" which were necessary to operate the machine. New Carlton regarded this as "a particularly sensitive issue" because it had been an issue in a recent audit, and noted that all staff members had received in-service counseling on proper completion of the checklist.

(*Id.* at ¶ 7.)

**The Union's Grievance**

The Union timely filed a grievance on Basir's behalf, challenging her termination. (*Id.* Ex. 4 at 4.) On October 17, 2013, an arbitration hearing was convened. (*Id.* at ¶ 8.) Basir alleges that after taking testimony, the hearing officer dismissed all charges and ordered her reinstatement, but that New Carlton protested and was granted leave to present additional witnesses regarding the "June 3, 2009 incident." (*Id.*) The hearing continued on January 10, 2013, with additional witnesses testifying. (*Id.*) Basir herself testified during the proceedings.

In a written opinion dated May 22, 2013, the arbitrator, Martin F. Scheinman, Esq., rendered his decision denying the Union's grievance. (*Id.* at ¶ 9.) He determined that the June 17, 2009 "issue" involving the glucometer had not been established. (*Id.* Ex. 4 at 2.) Instead, arbitrator Scheinman focused on the "crux of the case against Basir," the June 30, 2009 incident.

(*Id.*) Scheinman noted that the undisputed evidence revealed that the resident at issue in this incident was found in bed, soiled and unattended to, rather than in the Day Room where the resident should have been by 11:30 that morning. (*Id.*) Scheinman further found that this resident's care had been assigned to a staff member who was also responsible for taking another resident to the clinic for surgery, and who had also left work early that morning. (*Id.* at 3.) Scheinman added: "It is undisputed Basir, as the Charge Nurse, should have reassigned the resident. It is also clear no one was given that assignment prior to the resident being found in bed." (*Id.*) As Scheinman concluded:

> Basir failed to arrange the coverage she should have early in the morning on June 3, 2009. It was only later in the day when the resident was discovered uncared for that [a staff member] was reassigned to cover the resident. The conclusion is inescapable this reassignment was not before 10:30.

(*Id.*)

Scheinman noted that his conclusions were drawn after considering "extensive testimony and follow up by the Union," rejecting the Union's claim that there was extra staff on duty that day, and the other proffered reasons to excuse or ameliorate Basir's misconduct. (*Id.* at 3–4.) He noted that Basir's own comments during the hearing

> do not justify what transpired. She failed to do the very essence of what is required of an LPN in charge of a floor. Her failure to perform properly directly led to the resident failing to have care until at least 10:30 a.m. on the day shift. Such a situation is untenable.

(*Id.*)

Having so concluded, Scheinman turned to fixing an appropriate penalty. He wrote:

> Had Basir's record been free of discipline, I might have been able to agree with the Union's assertion [that] discharge was too severe a penalty. However, after carefully analyzing [her] past record, which showed, for example, in 2009, the failure to pick up doctor's orders, not following doctor's orders, leaving a resident in an improper position causing the resident to choke on medication and the failure to assess the pain of a resident, I must

5

> conclude there is no basis for me to set aside the determination made by [New Carlton] to discharge Basir.

(*Id.*) Scheinman denied the Union's grievance. (*Id.*)

**The Instant Litigation**

On September 19, 2013, Basir filed a verified petition in the Supreme Court of the State of New York, Kings County, seeking a judgment pursuant to Article 78 of the CPLR setting aside the arbitrator's determination.[4] (Verified Pet.) In her petition, Basir argues that the arbitrator exceeded the scope of his power by rending his decision outside of the time constraints set forth in the CBA. (*Id.* at ¶ 15.) Basir also argues that the arbitrator denied her due process because she lacked proper notice of the charges against her, and that the arbitrator's decision was arbitrary and capricious because he relied on "a specific instance of misconduct involving a specific patient," while the original charge referred only generally to Basir's failure to properly allocate staff on the day of the incident, and because he "wrongly considered . . . hearsay testimony." (*Id.* at ¶ 16–17.) On October 18, 2013, New Carlton removed the case to this court, (*see* Notice of Removal), and now moves to dismiss. New Carlton's motion is granted.

## DISCUSSION

### 1. LMRA Preemption and Removal

The Court addresses first the removal of this action, and finds it to be proper here. In its Notice of Removal, New Carlton invokes federal question jurisdiction pursuant to 28 U.S.C. § 1441(a), and Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a). Under Section 301 "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States

---

[4] New Carlton notes that Article 75 of the CPLR, and not Article 78, would be the proper vehicle to vacate an arbitration. This distinction is of no moment here; as discussed below, the LMRA pre-empts Basir's state law claims.

having jurisdiction of the parties." *Id*. This section preempts state law contract claims involving alleged breaches of collective bargaining agreements, and extends to any state law claim that substantially depends upon analysis of such an agreement. *Wynn v. AC Rochester*, 273 F.3d 153, 157–58 (2d Cir. 2001); *Vera v. Saks &Co.*, 335 F.3d 109, 116 (2d Cir. 2003). Thus, even if a plaintiff's complaint does not expressly state a federal claim, if any of the state claims put forward by a plaintiff are preempted by Section 301, the action may properly be removed to federal court. *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232–33 (2d Cir. 1997).

Indeed, "there is ample caselaw in which federal courts have relied on jurisdiction pursuant to §301 of the LMRA to confirm or vacate an arbitration award." *Jamaica Buses, Inc. v. Transp. Workers' Union, AFL-CIO, Local 100*, No. 02-CV-2533 (SJ), 2003 WL 1621026, at *3–4 (E.D.N.Y. Mar. 26, 2003) (concluding federal jurisdiction exists over claims seeking to confirm or vacate arbitration awards granted pursuant to a CBA) (collecting cases). Here, that is precisely what Basir seeks. Her claims center directly on rights created by the CBA between her union and her employer, and require the application and interpretation of the CBA. *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) ("If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute.") Thus, the LMRA governs Basir's claims, and removal was proper.[5]

---

[5] Basir relies on a number of cases to argue that this action is not preempted and should, instead, be remanded to state court. They are inapposite as they arise in non-LMRA contexts. (*See* Mem. in Reply (Doc. No. 20) at 4, n.1.)

**2. Basir's Standing Under the LMRA**

An individual employed under a CBA and represented by a union in an arbitration proceeding held pursuant to the CBA has standing to challenge a proceeding only under limited circumstances. In order to successfully challenge an arbitration proceeding in which the union and the employer were the only parties, an employee must show (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation. *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983)). An individual employee who is not a party to an arbitration hearing under a CBA therefore generally lacks standing absent a claim that the union breached its duty of fair representation. *Katir v. Columbia Univ.*, 15 F.3d 23, 24–25 (2d Cir. 1994); *see also Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 336 (S.D.N.Y. 2012) (citing *DelCostello*, 462 U.S. at 164–65) ("An employee has standing to sue his employer for breach of a CBA under § 301 of the LMRA only if there are allegations that the Union breached its duty of fair representation."). To give rise to a breach of the duty of fair representation, "the union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermined the arbitral process." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 1989).

Here, Basir hereself concedes that she has not raised a claim against the Union for breach of the duty of fair representation. (Mem. in Opp'n at 4.) She therefore lacks the necessary standing to challenge the arbitrator's decision under the LMRA.

Moreover, as New Carlton maintains, even presuming the right to bring this action, Basir has failed to state a valid claim to vacate the arbitration award. (*See* Mem. in Reply at 9, n.6.) Courts look to Section 10(a) of the Federal Arbitration Act ("FAA") for "guidance in labor

arbitration cases." *See N.Y.C. Dist. Council of Carpenters v. Gotham Installations, Inc.*, 13-CV-5659, 2013 U.S. Dist. LEXIS 159057, at *5 (S.D.N.Y. Oct. 24, 2013). And as Basir herself acknowledges, "the role of a district court in reviewing an arbitral award is 'narrowly limited,'" noting that "arbitration panel determinations are generally accorded great deference under the FAA." (Mem. in Opp'n at 8); *see also Duffy v. Legal Aid Soc'y*, 2013 U.S. Dist. LEXIS 19456, at *8 (S.D.N.Y. Feb. 12, 2013). Under section 10(a), a court may vacate an arbitration award only where the award was procured by corruption, fraud or undue means, through partiality, corruption or misconduct by the arbitrator, or where the arbitrator exceeded his power.

Even under the most liberal construction, Basir's petition fails to state a viable ground for vacatur. Basir makes vague and conclusory assertions of misconduct, suggesting that the arbitrator's decision was untimely under the CBA, and that in doing so, the arbitrator exceeded his power. Yet, Basir fails to cite to anything in the CBA to support this assertion. Similarly, Basir suggests that the arbitrator relied on evidence that Basir was unaware of at the time of the hearing, as well as hearsay. Yet Basir fails to specify the nature of that evidence, or how this claim falls within the limited grounds for challenging an arbitrator's decision.

As New Carlton aptly notes, "without any other factual allegations to support one of the enumerated grounds to challenge an award under the FAA, the Verified Petition merely evidences Petitioner's subjective disagreement with Arbitrator Scheinman's award. . . . Petitioner's displeasure with the award does not constitute grounds for vacatur." (Mem. in Reply at 9, n.6.); *see Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 597 (S.D.N.Y. 2006) ("Even if a federal court is persuaded than an arbitrator has reached an incorrect legal result, it should not conduct an independent review of the factual record presented to the arbitrator in order to

achieve the 'correct' result." (quotations and alterations omitted)). Thus, Basir's petition asserts no valid basis, in law or fact, to upset the arbitrator's award.[6]

## CONCLUSION

For the foregoing reasons, New Carlton's motion to dismiss, (Doc. No. 16), is GRANTED and this action is DISMISSED. The Clerk of Court is directed to enter the accompanying judgment and to close this case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      September 22, 2015

_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[6] Because the Court finds that Basir lacks standing to challenge the arbitration, and even if she did, that she has failed to state a valid claim, the Court need not resolve whether the petition was untimely.